UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINE CROOK,

       Plaintiff,                              CASE NO. 04-74289

-vs-                                                  PAUL D. BORMAN
                                                     UNITED STATES DISTRICT JUDGE

FITNESS USA CORPORATION,
a Michigan Corporation.

       Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

     Now before the Court is Defendant's, Detroit Health Corp. d/b/a Fitness USA Supercenters ("Defendant" or "Fitness USA"), Amended Motion for Summary Judgment.

**BACKGROUND:**

     This action involves Defendant's alleged violations of the American With Disabilities Act and Michigan Handicappers Civil Rights Act based upon the circumstances surrounding Plaintiff Kristine Crook's ("Plaintiff") termination of employment after four and a half months.

     Plaintiff was hired as a part-time fitness instructor at Defendant's facility on June 4, 2003. (Def.'s Mem. Supp. Mot. 4). As part of her employment, Plaintiff was required to perform two primary functions: (1) service members,[1] and (2) generate new memberships. (*Id.* at

---

[1] "Service" refers to the personal assistance provided members in matters of exercise and nutrition, which Defendant states allows instructors to obtain new member referrals. (Def.'s Mem. Supp. Mot. 1).

1

1). Defendant claims that because Plaintiff never came close to meeting her sales expectations and her service was inadequate, Defendant was terminated. (*Id.*). Plaintiff counters that she was terminated in violation of the Americans with Disabilities Act ("ADA"), and the Michigan Persons with Disabilities Civil Rights Act[2] ("MPDCRA"), because of her migraine headaches and schizophrenia.

Plaintiff filed her Complaint on November 3, 2004, alleging that Defendant violated the ADA and MPDCRA when it terminated her because she was suffering from migraine headaches and schizophrenia. Defendant filed the instant amended motion on September 21, 2005. Plaintiff filed her response on October 18, 2005. Defendant filed its reply on November 15, 2005. Oral argument was heard in this case on January 6, 2006.

**ANALYSIS**

**A.    Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] Plaintiff styled the count in her Complaint relating to this charge as a violation of the "Michigan Handicappers' Civil Rights Act." A 1998 amendment to the Act substituted "persons with disabilities" for "Michigan handicappers." The Court shall refer to the Act by its current, amended name.

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of

3

evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.    Discussion**

    **1.    ADA Violation**

        **a.    Disability under ADA**

"To establish a prima facie case [of discrimination] under the ADA, a plaintiff must demonstrate that (1) she was disabled, (2) she was qualified to perform the essential functions of the job, and (3) her employer subjected her to discriminatory treatment solely because of her disability." *Collins v. Blue Cross Blue Shield of Michigan*, 228 Mich. App. 560, 568 (1998). The Sixth Circuit has held that "a disabled employee may be discharged for misconduct, even where the misconduct is a manifestation of the employee's disability." *Id.* at 569 (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir. 1995) (upholding discharge of a football coach for drunken driving, even though he claimed his behavior was the result of alcoholism); *Landefeld v. Marion General Hosp, Inc.*, 994 F.2d 1178, 1181 (6th Cir. 1993) (upholding discharge of an internist whose misconduct in pilfering colleagues' hospital mailboxes was claimed to be a result of his mental illness); *Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 442 (6th Cir. 1991) (upholding discharge of employee whose psychological condition rendered him hypersensitive to criticism and rejection in the workplace)).

Defendant disputes that Plaintiff qualified as disabled because she was not significantly limited in any major life activities. To qualify as disabled, a plaintiff must meet one of three definitions of a disability: (1) a physical or mental impairment that substantially limits one or

more of the major life activities of each individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. §12102(2). Both parties appear to concede that Plaintiff suffered an impairment due to her migraines. The issue in dispute is what constitutes the substantial limitation of one of more major life activities.

29 C.F.R. 1630.2i defines major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." "Substantially limits" is defined as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. 1630.2j. When determining whether an individual is substantially limited by a major life activity, the Court is instructed to consider:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

An impairment that is corrected does not substantially limit a major life activity. *Sutton v. United Air Lines,* 527 U.S. 471, 483 (1999).

### 1. Whether Plaintiff's schizophrenia constitutes a disability

Plaintiff concedes in her Complaint that her schizophrenia did not unduly interfere with her ability to perform her employment duties. (Compl. ¶ 36). While Plaintiff had several episodes in which she was reduced to tears on the job, and on one occasion claimed to be hearing

voices, her treating psychiatrist, Dr. Douglas Arends, noted several times during his deposition that she did not manifest symptoms typical of a schizophrenic during her employment with Defendant, and that he wondered if the diagnosis was even proper considering her lack of symptoms. (*See* Dr. Arends Dep. 16-20; 28-29; 37). Dr. Arends indicates that Plaintiff's medication may have helped alleviate her symptoms of the disorder, in which case Plaintiff would not be deemed disabled just by virtue of a diagnosis of schizophrenia. *See Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 487 (6th Cir. 2000) (noting that an individual is not disabled where an otherwise substantially limiting impairment is brought under control by medication.).

Moreover, Plaintiff testified that she was on medication for her schizophrenia during the entire time in which she was employed with Defendant and never missed any doses, (Pl.'s Dep. 94), and her Complaint states that her schizophrenia is fully controlled by medication. (Compl. ¶ 35). Plaintiff has not presented any evidence that her medication caused her any adverse side effects that might constitute a substantial limitation on a major life activity. *See Sutton*, 527 U.S. at 482 (noting that if "a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures -- both positive and negative -- must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."); *see also Gilday v. Mecosta County*, 124 F.3d 760, 767 (6th Cir. 1997) (stating that "it may well be in some instances that the controlling medication (or other mitigating measure) will itself impose a substantial limitation on an individual's major life activities.").

Because the Court finds that Plaintiff's schizophrenia was controlled by medication during her employment with Defendant, and did not substantially impair a major life activity, Plaintiff's schizophrenia itself does not constitute a disability under the ADA. *See Gilday v. Mecosta County,* 124 F.3d at 762 (finding no disability under the ADA where the plaintiff's diabetes, which was controlled by medication, did not substantially impair any of his major life activities); *see also Sutton*, 527 U.S. at 483 (holding that an impairment that is corrected does not "substantially limit" a major life activity).

On the other hand, the Court finds that Plaintiff meets the "regarded as" definition of disabled. Exhibit W of Plaintiff's response is a letter written by Defendant to the Michigan Department of Civil Rights in response to the "Statement of Concern" filed by Plaintiff. In paragraphs four and five of the letter, Defendant's Administrative Director Jodi L. Berry states:

> In addition, Ms. Crook advised us on a number of occasions that she was schizophrenic and heard voices talking to her, causing her a great deal of difficulty focusing on her day to day work activities.
>
> Since the sole function of an Instructor is to service and solicit members, there clearly is no reasonable accommodation possible, which could satisfy Ms. Crook's unique and unusual circumstances.

(Pl.'s Resp. Ex. W ¶¶ 4-5). The Court finds that this letter sufficiently demonstrates that Defendant regarded Plaintiff as disabled due to her schizophrenia.

### 1.     Whether Plaintiff's migraines constitutes a disability

Taking into consideration the record, as well as the above case law and relevant C.F.R. guidelines, the Court finds that Plaintiff's major life activity of working was affected by her migraines. Judge David Lawson of the Eastern District of Michigan has recognized a combination of seizures and migraines as a disability under the ADA. *See Rosteutcher v.*

*MidMichigan Physicians Group*, 332 F. Supp. 2d 1049, 1060 (E.D. Mich. 2004).

Plaintiff apparently suffered from headaches[3] for a period of 46 continuous days,[4] which interfered with her ability to do her job at a fitness instructor. Several co-workers - and Plaintiff herself - testified at their depositions that Plaintiff went home early on a regular basis because she was not feeling well due to her frequent headaches. (*See* Pl.'s Feb. 20, 2005 Dep. 89; Garrett Dep. 43; Razzak Dep. 63-64). Manager Irum Razzak indicated that Plaintiff refused to provide service to members because of her headaches "many times," perhaps even once or twice each week. (Razzak Dep. 64). Razzak also discussed with Plaintiff that the headaches were interfering with her ability to do her job. (*Id*. at 65).

Furthermore, the evidence shows that Defendant regarded Plaintiff as disabled by her migraines. Exhibit W of Plaintiff's response, the letter in response to Plaintiff's Statement of Concern filed with the Michigan Department of Civil Rights, states that:

> Ms. Crook advised her Manager and Supervisor that she found approaching members and soliciting new prospective members to be impossible duties for her to perform because the stress and anxiety of the people contact caused her to have headaches.
>
> [Plaintiff] further informed us that the headaches were severe enough that it made it impossible for her to work. As a result, she was unable to perform the essential duties of the given job. . .

(Pl.'s Resp. Ex. W ¶¶ 2-3). In addition, the Separation Form, included as Exhibit R of Defendant's motion, explicitly states that Defendant terminated Plaintiff because of her health,

---

[3] There is some suggestion that the migraines resulted from job stress or a reaction to medication she was taking at the time. (*See* Dr. Arends Dep. 32; 50-51).

[4] Plaintiff indicates in her deposition that she had a headache for 43 days as of October 17, 2003, per Dr. Lax's notes. Plaintiff also states that she left work that morning due to the headache. (Pl.'s 2/20/05 Dep. 92).

8

which included her constant migraine headaches. Based on this evidence, the Court holds that Plaintiff's migraines constituted a disability under the ADA.

### b. "Qualified individual with a disability"

Significantly, the ADA requires that the person claiming discrimination be a *qualified* individual with a disability. *See* 42 U.S.C. § 12112. Plaintiff contends that despite Defendant's viewing her as disabled by her schizophrenia and migraines, she was otherwise qualified for her position as an instructor with Defendant.

In order to prevail on a disability based claim, it must be shown that: "(1) the plaintiff is a 'handicapped person' under the Act; (2) the plaintiff is 'otherwise qualified' for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program by reason of his handicap. . . ." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1180 (6th Cir. 1993). 42 U.S.C. § 12111(8) defines "otherwise qualified" or "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Such reasonable accommodation may include "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C. § 12111 (9)(B). The C.F.R. guidelines for the EEOC define "reasonable accommodation" to mean:

> Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.

29 C.F.R. § 1630.2(o) (ii). The United States Supreme Court has interpreted the "qualified individual with a disability" language to mean that the individual must be "able to meet all of a

9

program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406 (1979).

The Court finds that Plaintiff was not "otherwise qualified" for the position of instructor at Defendant's facility. Plaintiff has failed to show that she was able to perform the essential functions in the time she was not suffering from migraines. As every single co-worker of Plaintiff testified, service to customers was an essential facet of Plaintiff's position. Defendant's managers required Plaintiff to fill out Member Service Records so that they could account for whether Plaintiff was fulfilling her service requirements. Each new employee is informed of the importance of completing these records, and can be fired for failing to complete them. (Razzak Dep. 50, 51). However, of the fourteen such records produced by Plaintiff, Plaintiff only completed a full form on three days. In addition, Defendant's managers provided Plaintiff with a firm target of 6-8 members to be serviced every hour. Even taking into account the nearly two and a half months in which Plaintiff suffered from continuous migraines, Plaintiff's average number of members serviced per hour fell far below the target set by her managers.[5]

Defendant also received several complaints from members of Fitness USA. In one such incident, Plaintiff was accused of yelling at a member who was using the Stairmaster, and in another, engaging in an altercation with a member in the parking lot after business hours. (Garrett Dep. 45-46). Although Plaintiff claimed that the member had called her names, manager Lavahnya Garrett witnessed the entire occurrence and never heard the member say anything to Plaintiff. (*Id.*). In another incident, Plaintiff yelled at a member about the manner in

---

[5] In the time period from August 25, 2003 to October 24, 2003, Plaintiff never averaged more than 2.4 members per hour. (*See* Def.'s Mem. Ex. O).

which she was performing an exercise, even though the member had not asked for Plaintiff's assistance. (Razzak Dep. 58-59). Another co-worker, Maya Mitchell, who was a friend of Plaintiff's during her employment, stated that other members complained about Plaintiff's attitude and that she was not "interacting" with them. (Mitchell Dep. 53-54). Plaintiff also experienced frequent "crying spells" during her last two months of work, which she attributed to a change in her birth control medication. (Pl.'s Mar. 16, 2005 Dep. 62-63).

Finally, Plaintiff performed exceedingly poor in the area of membership sales. During the eighteen weeks in which she was employed with Defendant, Plaintiff sold a total of five memberships, which, as Defendant notes, translates into zero sales for 70% of her "selling weeks." One manager commented that Plaintiff did not "come across with the personality" that she believed necessary to a job as a fitness instructor, and that she "had a problem with approaching the members and asking questions regarding the service sheet to the members." (Anderson Dep. 43, 46). Another manager stated that she had considered firing Plaintiff around the end of September after she had told Plaintiff repeatedly about her incomplete service sheets and that she was not servicing enough members. (Garrett Dep. 53-54). She stated that she had considered putting Plaintiff on a two-week probation, but was transferred to manage another location before she was able to do so. (*Id.* at 54). Garrett testified about written reprimands to Plaintiff because she was not serving members. (*Id.* at 31-32). Further, Plaintiff's comparison of herself to another employee, Robin Sanders, is not comparable because Sanders was four to five times more productive than Plaintiff. Thus, the evidence supports the finding that Plaintiff was not otherwise qualified for her position because she could not perform its essential functions.

Furthermore, the Sixth Circuit has instructed that the court must "not only [consider] the

11

handicapped applicant's ability to perform the job's essential function, but also whether a reasonable accommodation by the employer would enable the handicapped person to perform those functions." *Hall v. United States Postal Service*, 857 F.2d 1073, 1078 (6th Cir. 1988). Plaintiff "bears the initial burden of proposing an accommodation and showing that the accommodation is objectively reasonable." *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998) (quoting *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996)). Despite this additional inquiry, Defendant is not required to accommodate Plaintiff's disability to the extent that doing so would eliminate the essential functions of the job. *Hall*, 857 F.2d at 1078 (noting that "an accommodation that eliminates an essential function of the job is not reasonable."); *see also Carrozza v. Howard Cty.*, 847 F. Supp. 365, 367-368 (D. Md. 1994) ("Even though that behavior night have been caused-in-fact by plaintiff's bi-polar disorder, the employer was justified [] in pursuing adverse employment action against her, to and including her termination, for her misbehavior in the work place.").

Here, the record is devoid of evidence that Plaintiff ever requested an accommodation for her condition. Moreover, an essential - if not the sole - function of Plaintiff's job was to provide service to members and to make sales. Thus, any accommodation to Plaintiff would entail allowing Plaintiff to provide less sales and less service than required because doing her job was causing her to have migraines. Because this accommodation would eliminate the essential function of the job, and is therefore unreasonable, the Court finds that Plaintiff was not otherwise qualified for her position, and grants Defendant's Motion for Summary Judgment on both ADA

counts in Plaintiff's Complaint.[6]

### 2. MPDCRA Violation

A plaintiff establishes a *prima facie* case of discrimination under the MPDCRA "where (1) the plaintiff is ['a person with a disability'] as defined in the statute, (2) the handicap is unrelated to the plaintiff's ability to perform the duties of a particular job or position or is unrelated to her qualifications for employment or promotion, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute." *Collins*, 228 Mich. App. at 568-69 (1998). Because this claim is in virtually identical to Plaintiff's ADA claim, and the Court has granted Defendant's Motion for Summary Judgment on that claim, the Court also grants summary judgment on Plaintiff's MPDCRA claim. *See Monette v. Electronic Data Sys., Inc.*, 90 F.3d 1173, 1177 n.3, 1186 (6th Cir. 1996) (holding that because disability discrimination claims brought under Michigan law essentially track those under federal law, resolution of Monette's claim under the ADA also dispensed with his claims under the MPDCRA).

**CONCLUSION:**

Because Plaintiff was not otherwise qualified for her position with Defendant, the Court GRANTS Defendant's Motion for Summary Judgment on Count I (Violation of Americans with Disabilities Act (Migraine Headaches)) and Count II (Violation of Americans with Disabilities Act (Schizophrenia)).

---

[6] This case is not analogous to *Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001), where evidence was presented in the form of favorable performance reports that Ross was qualified to perform his job.

The Court further GRANTS Defendant's Motion for Summary Judgment on Count III (Violation of the Michigan Handicappers Civil Rights Act) because it is identical to Plaintiff's ADA claims.

**IT IS SO ORDERED.**

                                                s/Paul D. Borman  
                                                PAUL D. BORMAN  
                                                UNITED STATES DISTRICT JUDGE

Dated: February 28, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on February 28, 2006.

                                                s/Jonie Parker  
                                                Case Manager